UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JONATHAN E. MANWELL,

        Plaintiff,   Case No. 1:21-cv-745

v.   Honorable Sally J. Berens

GERALDINE P. HARRIS,

        Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.      Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Librarian Geraldine P. Harris.

Plaintiff alleges that Defendant Harris denied him "access to legal research materials due to lack of funds."  (ECF No. 1, PageID.3.)  He avers that because of this lack of access, he was "delayed in his filing and unable to perfect his amended application for leave to appeal."  (*Id.*)  Plaintiff claims he also experienced delay in "filing motions and amending filed complaints with new evidence."  (*Id.*)

As background, Plaintiff alleges that Defendant Harris previously "damaged and destroyed documents sent by [him] to be copied; this includes original, irreplaceable court documents."  (*Id.*)  According to Plaintiff, Defendant Harris first claimed that he was lying, but then stated that Plaintiff was "merely copying such documents for his own person[al] use and 'filling his locker with them.'"  (*Id.*)  Plaintiff indicates this is relevant information because he "does have deadlines, in an already urgent situation, and [Defendant Harris] continuously delays copies believing that they are merely 'personal.'"  (*Id.*)

Plaintiff also references a memorandum issued on October 26, 2020, that indicated that individuals with an active case were able to access the law library.  (*Id.*)  Plaintiff avers he "had to file his said application without such access."  (*Id.*)  Plaintiff alleges that, instead of granting access to the law library, Defendant Harris sent out segregation law library request forms, which he claims are helpful only if "one knows the required rule, material[,] or case law."  (*Id.*, PageID.4.)  He

claims that after inmates submitted those forms, Defendant Harris "decided to start charging for the requested legal materials, while still denying access to the law library itself." (*Id.*)

Plaintiff claims that, during this time, Defendant Harris "published and distributed letters for the Michigan Court of Appeals to toll filing deadlines due to COVID-19." (*Id.*)  These letters omitted the relevant Michigan Court Rules, and Plaintiff asked "how one could get the correct rule without knowing it or not having the monies in one's account." (*Id.*)  A second letter "then addressed the Court of Appeals yet referenced subchapter 7.300, which is reserved solely for the Michigan Supreme Court." (*Id.*)  Plaintiff sent a kite to Defendant Harris "stating the error and the fact that there are two different rules under subchapter 7.200, because there are appeals by both right and leave in the Court of Appeals." (*Id.*)  Plaintiff claims that these letters were Defendant Harris's "way of telling inmates that they must toll their filing deadlines because she was not going to grant access to any legal research materials." (*Id.*)

Plaintiff avers that the "Michigan Supreme Court did not mandate all persons to toll their filing deadlines, but rather offered the option." (*Id.*, PageID.5.)  He avers that he "will not delay any filing for any reason" because of the circumstances of his case.  (*Id.*)  Plaintiff informed Defendant Harris that individuals who had already filed a case "would have to file a motion to stay proceedings and hold the application for leave to appeal (or appeal by right) in abeyance." (*Id.*)  Plaintiff asserts that he will not file such a motion for any reason, "especially not for someone who does not want to perform the job for which they are compensated." (*Id.*)

Plaintiff seeks damages or, alternatively, "the withheld transcripts, documents[,] and evidence required for [his] post-conviction relief." (*Id.*, PageID.8.)

**II.    Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order

5

> to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3.) "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff vaguely states that Defendant Harris's denial of access to legal materials impeded his ability to "perfect his amended application for leave to appeal," as well as delayed him in "filing motions and amending filed complaints with new evidence." (ECF No. 1, PageID.3.) Moreover, in his request for relief, he references seeking post-conviction relief. (*Id.*, PageID.8.) Plaintiff's complaint, however, is devoid of facts describing the underlying cause of action he was allegedly frustrated in pursuing by Defendant Harris's actions. Plaintiff also fails to describe the nonfrivolous claims that he could not pursue in the underlying action. *Lewis*, 518 U.S. at 353; *Hadix*, 182 F.3d at 405. Plaintiff also fails to describe the remedy lost due to Defendant Harris's alleged actions. *See Christopher*, 536 U.S. at 415. Indeed, Plaintiff suggests that he could have requested his filing deadlines be tolled by the Michigan Court of Appeals due to lack of access to legal materials because of the COVID-19 pandemic, but that he chose not to file a motion

6

requesting such relief. Given the lack of information regarding the underlying action, the Court concludes that Plaintiff has not set forth a plausible First Amendment access to the courts claim against Defendant Harris. His claim, therefore, will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claim is properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: January 26, 2022   /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge